**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BINYAMIN PINKUS,

                *Plaintiff*,

    -against-

SIRIUS XM RADIO INC.,

                *Defendant*.

Case No.: 1:16-cv-10858

Hon. Gary Feinerman

**MEMORANDUM IN SUPPORT OF DEFENDANT SIRIUS XM'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Paula W. Render
Christopher Adam Hall
JONES DAY
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Email: prender@jonesday.com
Email: chall@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com
*Attorneys for Defendant Sirius XM Radio Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ......................................................................................................... 1

FACTS ......................................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     The TCPA Restricts Random and Sequential Dialing, Not Predictive Dialing................. 2

II.    Pinkus Fails to Plead the Use of Random or Sequential Dialing...................................... 9

CONCLUSION........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACA International v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018) ...................................................................... passim

*Adams v. City of Indianapolis,*
    742 F.3d 720 (7th Cir. 2014) .................................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................9

*Dominguez v. Yahoo, Inc.,*
    629 F. App'x 369 (3d Cir. 2015) ......................................................................6, 9

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    7 FCC Rcd. 8752 (1992) (1992 Order)................................................................8

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    10 FCC Rcd. 12391 (1995) (1995 Order).............................................................9

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    18 FCC Rcd. 14014 (2003) (2003 Order).............................................................6

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    23 FCC Rcd. 5594 (2008) (2008 Order)...............................................................6

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    27 FCC Rcd. 15391 (2012) (2012 Order).............................................................6

*In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991,*
    30 FCC Rcd. 7961 (2015) (2015 Order)...............................................................6

*Lofton v. Verizon Wireless (VAW) LLC*,
No. 13–cv–05665–YGR, 2015 WL 1254681 (N.D. Cal. Mar. 18, 2015)..............................11

*Marshall v. CBE Group, Inc.*,
No. 2:16–cv–02406–GMN–NJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018).....................8

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ..................................................................................................9

*Smith v. Aitima Medical Equipment, Inc.*,
No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780
(C.D. Cal. July 29, 2016) .......................................................................................................10

*Toney v. Quality Resources, Inc.*,
75 F. Supp. 3d 727 (N.D. Ill. 2014) ..................................................................................10, 11

*Unchageri v. YuppTV USA, Inc.*,
No. 17 C 3862, 2018 WL 1184737 (N.D. Ill. Mar. 7, 2018) ...........................................11, 12

STATUTES

47 U.S.C. § 227(a)(1)........................................................................................................................4

OTHER AUTHORITIES

H.R. Rep. No. 102-317 (1991)..........................................................................................................3

*Hearing Before the House Subcommittee on Telecommunications and Finance*,
101st ....................................................................................................................................4

*Hearing Before the House Subcommittee on Telecommunications and Finance*,
102d....................................................................................................................................3

*Hearings Before the Senate Committee on Commerce, Science, and
Transportation*, 102d ...........................................................................................................3

Fed. R. Civ. P. 11 .............................................................................................................................2

Fed. R. Civ. P. 12(b)(6)....................................................................................................................9

Fed. R. Civ. P. 12(c) ........................................................................................................................9

*S. 1462, The Automated Telephone Consumer Protection Act of 1991: Hearing
Before the Senate Subcommittee on Communications*, 102d....................................................3

S. Rep. No. 102-178 ................................................................................................................................3

S. Rep. No. 102-178 (1991) ...................................................................................................................3

## INTRODUCTION

The Court should grant Sirius XM Radio Inc. (Sirius XM) judgment on the pleadings on Plaintiff Binyamin Pinkus' claim that it used an automatic telephone dialing system (ATDS) in violation of the Telephone Consumer Protection Act of 1991 (TCPA). The TCPA restricts devices that have the capacity to perform a specific function: automatically generating and dialing random or sequential telephone numbers. It does not restrict devices that merely have the capacity to perform the distinct function of "predictive dialing" (using algorithms to dial telephone numbers and to help "predict" when an agent will be free to take the next call (and speak personally to the consumer)). The Amended Complaint does not plead any facts suggesting that the dialing equipment used to call Pinkus could automatically generate and dial random or sequential numbers—the only statutorily relevant function. Rather, it pleads at most that the dialing equipment could engage in predictive dialing. The complaint therefore fails to state a claim to relief under the TCPA's ATDS provisions.

## FACTS

For purposes of this motion, Sirius XM assumes that the factual allegations in the Amended Complaint are true. The complaint alleges that Sirius XM made calls or hired outside vendors to make calls to Pinkus on "at least a hundred" occasions "from 2014 onward." (Am. Compl. ¶ 21.) It asserts that calls were made to Plaintiff "*en masse*," using "'predictive dialing' technology," which (according to Plaintiff) "automatically places calls without human intervention until the called party answers the call, at which time such automatic dialer attempts to connect the called party with a human representative." (*Id*. ¶ 18.) The complaint continues that "no customer service representative was on the line when the Plaintiff would answer the Defendant's calls." (*Id*. ¶ 19.) "Instead, there would be a delay after the Plaintiff answered the phone," and that "[s]ometimes . . . the line would be silent with no customer service

representative at all." (*Id.*) The complaint also asserts that, "on many occasions, the Defendant would leave a pre-recorded message on Plaintiff's voicemail." (*Id.* ¶ 17.)

## ARGUMENT

To the extent Pinkus asserts that Sirius XM has violated the TCPA by using an ATDS, his complaint fails to state a claim, and the Court should grant Sirius XM judgment on the pleadings.[1]

## I. The TCPA Restricts Random and Sequential Dialing, Not Predictive Dialing

**A.** The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." As explained in more detail in Sirius XM's Brief on *ACA International* (Dkt. No. 98), this definition requires equipment to be capable of performing at least three tasks automatically. *First*, the equipment must be able to generate random or sequential numbers. Otherwise, it cannot have the capacity to do anything "using a random or sequential number generator." *Id.* § 227(a)(1)(A). *Second*, the equipment must be able to use that random or sequential number generator in order to store or produce telephone numbers to be called. That is what it means to have the capacity "to store or produce telephone numbers . . . , using a random or sequential number generator." *Id. Third*, the equipment must be able to dial those telephone numbers. The terms of the definition—"dial *such* numbers," *id.* § 227(a)(1)(B) (emphasis added)—refer back to the "telephone numbers" that were stored or produced "using a random or sequential number generator," *id.* § 227(a)(1)(A). *Finally*, the equipment must be capable of

---

[1] This motion does not seek judgment on the pleadings on Pinkus' claim that Sirius XM has also violated the TCPA by using a prerecorded voice. That said, Sirius XM is prepared to demonstrate to Pinkus' counsel that no artificial voices or prerecorded messaging was used. In short, granting judgment on the pleadings on the ATDS allegations should lead to a voluntary dismissal of the remaining allegations, which Pinkus will not be able to sustain consistent with Rule 11.

performing these functions *automatically*—without human intervention. "[The] 'automatic' in 'automatic telephone dialing system … would seem to envision non-manual dialing of telephone numbers." *ACA International v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018).

Congress targeted random and sequential dialers because those dialers pose distinctive problems. Such dialers, by definition, called telephone numbers indiscriminately. As a result, they often reached "lines reserved for [specialized] purposes." S. Rep. No. 102-178, at 2 (1991). For example, lawmakers heard about one 911 operator who received an automated call that began, "This is your lucky day." *Computerized Telephone Sales Calls and 900 Service: Hearings Before the Senate Committee on Commerce, Science, and Transportation*, 102d Cong. 34 (1991) (statement of Chuck Whitehead). Another "horror stor[y]" involved "the man in the hospital bed in the intensive care ward" who received an automated call "offering him a trip to Hawaii." *Id.* at 28 (statement of Rep. Unsoeld). Similarly, calls were made to special pagers assigned to patients on organ-transplant waitlists, misleading patients into believing that organ matches had been found. *Telemarketing/Privacy Issues: Hearing Before the House Subcommittee on Telecommunications and Finance*, 102d Cong. 111 (1991) (statement of Michael J. Frawley).

Sequential dialing posed all the same problems, only to a greater degree. Dialing whole blocks of numbers could overwhelm *all* of the telephone lines in a hospital or police station or fire department. H.R. Rep. No. 102-317, at 10 (1991); *see also* S. Rep. No. 102-178, at 2 (similar). In one case, a dialer sequentially called telephones in a hospital in Watertown, New York, tying up "exam rooms, patient rooms, offices, labs, emergency rooms, and x-ray facilities" with a pitch for a contest in which participants could win a vacation. *S. 1462, The Automated Telephone Consumer Protection Act of 1991: Hearing Before the Senate Subcommittee on*

*Communications*, 102d Cong. 43 (1991) (statement of Michael F. Jacobson). "Lives literally 'hung in the balance' while hospitals were unable to page doctors [or] to reach code blue teams," forced to "stand by, watching the dialer call each and every pager number, one by one, until the dialer ha[d] done its job and all the calls [were] completed." *Telemarketing Practices: Hearing Before the House Subcommittee on Telecommunications and Finance*, 101st Cong. 79 (1989) (statement of Steven S. Seltzer, President, Modern Communications Corporation). Cellular networks, too, were vulnerable to sequential dialing. Because cellular carriers "obtain[ed] large blocks of consecutive phone numbers for their subscribers," a sequential dialer running through such a group of numbers could "saturate mobile facilities, thereby blocking the provision of service to the public." *Telemarketing/Privacy Issues* 113 (statement of Michael J. Frawley). One carrier "had its system seized by autodialers three separate times for approximately 3 hours each time, during which time the service was totally disrupted to almost 1,000 customers." *Id.*

Congress responded to the unique problems posed by random and sequential dialers by enacting the TCPA's restrictions on ATDS equipment. Homing in on the technology responsible for these problems, Congress defined an ATDS as equipment that "has the capacity—(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

**B.** In restricting random and sequential dialers, Congress did not also restrict "predictive" dialers. A predictive dialer is "dialing equipment that can make use of algorithms to assist telemarketers in predicting when a sales agent will be available to take calls." *ACA International*, 885 F.3d at 701. The D.C. Circuit repeatedly recognized in *ACA International* that a predictive dialer is not the same thing as a random or sequential dialer. For example: "Some predictive dialers cannot be programmed to generate random or sequential numbers." *Id.*

4

at 702.  Again: "Predictive dialers can differ from … dialers that utilize random or sequential numbers."  *Id.*  And again: "At least some predictive dialers … have no capacity to generate random or sequential numbers."  *Id.*  The reason for the distinction is simple: "Predictive" functionality has nothing to do with random or sequential number generation.  Some predictive dialers might themselves "generate random or sequential numbers," while others might be capable only of "dial[ing] from an externally supplied set of numbers."  *Id.*  Conversely, dialers that "generate random or sequential numbers" are not necessarily predictive dialers.

Nowhere does the TCPA prohibit the use of predictive dialers, and that is the type of dialer Pinkus alleges was used here.[2]  The statutory text restricts the use of dialers capable of "using a random or sequential number generator"—not devices capable of "predictive dialing."  If Congress had wished to write a statute to restrict predictive dialing, it could have done so.

The statutory language itself is decisive, but the statutory purposes also confirm that the TCPA means what it says.  As explained above, Congress enacted the ATDS restrictions principally to address the unique problems posed by aimless dialing.  Predictive dialers do not pose those problems, because predictive dialing is not the same thing as aimless dialing.

To be clear, our position is not that predictive dialers are categorically exempt from the TCPA.  If a predictive dialer happens to have the capacity to generate and dial random and sequential numbers, it might qualify as an ATDS.  It would do so, however, on account of its random-and-sequential functionality, not on account of its predictive functionality.  To put the point another way, knowing that a device is capable of engaging in predictive dialing is like knowing that the device was manufactured on a Tuesday; it tells us nothing, one way or the

---

[2] Although we accept Pinkus' allegations as true for purposes of this motion, Pinkus' claims would ultimately still fail even if the case were to turn on the correctness of the allegation that Sirius XM's vendors used predictive dialers to call him. Pinkus alleges that he was called on his cell phone, and Sirius XM do not in fact use predictive dialers to call cell phones.

other, about whether the device can engage in the statutorily enumerated functions of random and sequential dialing.

    **C.** It is true that the Federal Communications Commission has issued a series of orders that could be interpreted to mean that a device can be an ATDS irrespective of the capacity to dial randomly or sequentially, and that a predictive dialer is an ATDS. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 132 (2003) (2003 Order); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 5594 (2008) (2008 Order); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, ¶ 2 n.5 (2012) (2012 Order); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) (2015 Order). The D.C. Circuit, however, wiped away these interpretations in its recent decision in *ACA International*.

    The Commission's interpretation from 2003 to 2015 was "hardly a model of clarity." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015). In 2003, the Commission suggested varied tests for liability: whether the equipment can dial "at random, in sequential order, or from a database of numbers" (2003 Order ¶ 131); whether it can "store or produce telephone numbers … using a random or sequential number generator" (*id.* ¶¶ 132–33); and whether it can "dial numbers without human intervention" (*id.* ¶ 132). In 2008, the Commission also asserted, separately, that a predictive dialer constitutes an ATDS—but did not explain how this could be so where the predictive dialer in question lacks the capacity to generate random or sequential numbers. 2008 Order ¶ 12. The Commission reaffirmed this jumble of views in 2012 and 2015. *See* 2012 Order ¶ 2 n.5; 2015 Order ¶ 10.

The D.C. Circuit vacated the Commission's interpretation of the functions of an ATDS (as embodied in the 2003, 2008, 2012, and 2015 Orders) in *ACA International*. The Court explained that the Commission's interpretation was arbitrary and capricious because it failed to articulate a comprehensible test. In some places, the Commission suggested that "a device must itself have the ability to generate random or sequential telephone numbers to be dialed." 885 F.3d at 701. In others, the Commission suggested that it is "enough that the device can call from a database of telephone numbers generated elsewhere." *Id.* Similarly, the Commission had espoused "competing" views about the status of predictive dialers. In some places, the Commission suggested that "predictive dialers … qualify as ATDSs" irrespective of whether they have the capacity "to generate random or sequential phone numbers." *Id.* at 702. In others, the Commission suggested that equipment "must be able to generate and dial random or sequential numbers to meet the TCPA's definition." *Id.* In sum, the Commission, "while speaking to the question [of the definition of ATDS] in several ways, g[ave] no clear answer." *Id.* at 702–03. Rather, the Commission adopted "competing interpretations"—a result incompatible with "reasoned decisionmaking." *Id.*

The D.C. Circuit therefore "set aside the Commission's treatment" of the functions of an ATDS as arbitrary and capricious. *Id.* at 703. In doing so, the court emphasized that the Commission's contradictory guidance was "not without practical significance," because "at least some predictive dialers … have no capacity to generate random or sequential numbers." *Id.*

In setting aside the Commission's "treatment" of the functions of an ATDS, the D.C. Circuit wiped out the 2003, 2008, 2012, *and* 2015 Orders. The 2015 Order—the order that prompted the petition for review in *ACA International*—"reaffirm[s]" those "prior orders." 885 F.3d at 694. By holding that the 2015 Order was arbitrary and capricious, the D.C. Circuit

necessarily ruled that the orders it reaffirmed were also arbitrary and capricious. What is more, the D.C. Circuit explicitly rejected the Commission's argument that, "because there was no timely appeal from [those earlier orders], it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones." *Id.* at 701. The court explained the petitioners in *ACA International* had taken the necessary procedural steps to ensure that "the agency's pertinent pronouncements" were *all* subject to review. *Id.* The D.C. Circuit thus decided the validity of the 2003, 2008, and 2012 Orders too—not just the validity of the 2015 Order.

The upshot of all of this is that the Court should resolve this case under the plain meaning of the statute, without regard to the Commission's atextual and contradictory orders. Under that plain meaning, as just set out, only the capacity to conduct random and sequential dialing renders a device an ATDS; the capacity to conduct predictive dialing does not. *See Marshall v. CBE Group, Inc.*, No.: 2:16–cv–02406–GMN–NJK, 2018 WL 1567852, *5 (D. Nev. Mar. 30, 2018) ("In light of [*ACA International*], this Court will not stray from the statute's language"); *id.* at *7 ("The D.C. Circuit rejected [the Commission's] interpretation of the TCPA, particularly as that definition pertained to systems that may not, in fact, have the capacity to dial randomly or sequentially. Accordingly, Plaintiff cannot rely on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers").

To the extent the Court wishes to consult any regulations, the relevant regulations are the ones that were in place before 2003. Those regulations—specifically, the Commission's 1992 and 1995 Orders—interpret the TCPA in accordance with its plain meaning. They expressly state that a device is an ATDS only if "the numbers called are … generated in a random or

sequential fashion." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, ¶ 47 (1992); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, ¶ 19 (1995) (device qualifies as an ATDS only if it calls "randomly or sequentially generated numbers"); *Dominguez*, 629 F. App'x at 372 (Commission "initially interpreted the [TCPA] as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed"). Now that the D.C. Circuit has set aside the Commission's most recent rulings, these earlier Orders—which the Commission has never reversed, vacated, or disavowed—constitute the Commission's last valid word about the functions of an ATDS. That last word confirms that the statute means what it says: the ATDS provision reaches random and sequential dialers, but not predictive dialers.

## II. Pinkus Fails to Plead the Use of Random or Sequential Dialing

**A.** "A motion for judgment on the pleadings under Rule 12(c) … is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, the plaintiff must "plea[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011). Here, that means Pinkus must plead enough "factual matter" to support the "reasonable inference" that the dialing equipment used to call him could automatically generate and dial random or sequential telephone numbers.

Pinkus fails to plead any factual matter that supports such an inference. Nothing in his complaint suggests, in any way, that the dialing equipment had the capacity to generate and call

random or sequential numbers. To be sure, Pinkus asserts that "no customer representative was on the line when the Plaintiff would answer," and that "there would be a delay after the Plaintiff answered the phone." (Am. Compl. ¶ 19.) But this allegation has nothing to do with random or sequential dialing, since a "pause does not create a plausible inference regarding the capacity . . . to make random calls." *Smith v. Aitima Medical Equipment, Inc.*, No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780, at *6 (C.D. Cal. Jul. 29, 2016).

If anything, Pinkus' complaint *negates* the inference that Sirius XM or its vendors used random or sequential dialers. The complaint asserts that Sirius XM and its vendors were "calling Plaintiff in an attempt to solicit business" and that they called him "on at least a hundred (100) occasions from 2014 onward." (Compl. ¶¶ 16, 21.) That allegation suggests that Sirius XM was *targeting* Pinkus for calls, not that it was dialing at random or in sequence. It is implausible that a random or sequential dialer would simply happen to reach the same person more than "a hundred" times.

**B.** Instead of alleging facts suggesting random or sequential dialing, the Amended Complaint alleges facts suggesting predictive dialing. The complaint asserts that "the calls made to Plaintiff, were placed *en masse* using 'predictive dialing technology.'" (Am. Compl. ¶ 18.) The complaint also alleges that "there would be a delay after the Plaintiff answered the phone." (Am. Compl. ¶ 19)—supposedly a "distinctive" sign of "a predictive dialer" (*Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014)). But as explained earlier, the TCPA restricts only random and sequential dialers; it does not prohibit predictive dialers. Allegations suggesting the use of "predictive dialing technology" thus do not plausibly suggest the use of an ATDS.

10

It is true that, before *ACA International*, some district courts ruled that pauses could support an inference that the defendant used an ATDS. But these decisions simply reasoned that a pause suggests the use of a predictive dialer and that (under the FCC's then-controlling orders) a predictive dialer is in turn an ATDS. *See, e.g.*, *Toney*, 75 F. Supp. 3d at 732 ("The call started with a distinctive click and pause prior to the caller's coming on the line, indicating that it was coming from a predictive dialer, an automatic telephone dialing system"); *Lofton v. Verizon Wireless (VAW) LLC*, No. 13–cv–05665–YGR, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) ("the 'telltale' pause after plaintiff picked up each call until the agent began speaking … suggests the use of a predictive dialing system, and thus renders plausible the conclusory allegation that an ATDS was used"). The premise that a predictive dialer is an ATDS is now no longer tenable after the D.C. Circuit's decision in *ACA International*. Decisions leaping from pauses to predictive functionality and from predictive functionality to ATDS status are thus no longer persuasive.

It is also true that this Court denied a motion to dismiss an ATDS claim in *Unchageri v. YuppTV USA, Inc.*, No. 17 C 3862, 2018 WL 1184737 (N.D. Ill. Mar. 7, 2018). But that case, decided before this Court had the guidance provided by *ACA International*, involved allegations that *did* suggest random or sequential dialing. The caller in that case sent text messages providing "promotional offers and pricing." *Id.* at *2–3. According to screenshots that the plaintiff attached, these messages contained "generic" statements "without any personalization." *Id.* at *3. Moreover, the calls "d[id] not provide any way for Plaintiff to reach a human, but instead were sent from an SMS 'short code' and merely provide[d] links to Defendant's websites." *Id.* These allegations suggested that the caller was sending text messages aimlessly—supporting an inference of random or sequential dialing. This case, by contrast,

features no comparable allegations of generic, aimless dialing.  Quite the opposite, it features allegations of highly targeted dialing; again, the complaint asserts that Sirius XM and its vendors were "calling Plaintiff in an attempt to solicit business" and that they called him "on at least a hundred (100) occasions from 2014 onward." (Compl. ¶¶ 16, 21.)  Moreover, the calls here *did* "provide [a] way for Plaintiff to reach a human"; Pinkus acknowledges that, after "a delay," a live agent would answer the phone (Am. Compl. ¶ 19).  *Unchageri* thus does not help Pinkus here.

## CONCLUSION

The Court should grant Sirius XM judgment on the pleadings on Pinkus' ATDS claim.

Dated: May 7, 2018                                Respectfully submitted,

                                                  */s/ Lee A. Armstrong*

                                                  Paula W. Render
                                                  Christopher Adam Hall
                                                  JONES DAY
                                                  77 West Wacker
                                                  Chicago, Illinois 60601-1692
                                                  Tel: (312) 782-3939
                                                  Fax: (312) 782-8585
                                                  Email: prender@jonesday.com
                                                  Email: chall@jonesday.com

                                                  Thomas Demitrack (admitted *pro hac vice*)
                                                  JONES DAY
                                                  North Point
                                                  901 Lakeside Avenue
                                                  Cleveland, OH 44114-1190
                                                  Tel: (216) 586-3939
                                                  Fax: (216) 579-0212
                                                  Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com
*Attorneys for Defendant Sirius XM Radio Inc.*

**CERTIFICATE OF SERVICE**

I, Lee A. Armstrong, hereby certify that on May 7, 2018, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Lee A. Armstrong*