**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**BINYAMIN PINKUS,**

     **Plaintiff,**

    **-against-**

**SIRIUS XM RADIO, INC.,**

     **Defendant.**

**Civil Case No.: 1:16-cv-10858**

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS**

---

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq. (YZ5857)
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Fax:  (732) 298-6256**
*Attorney for the Plaintiff
Binyamin Pinkus*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**............................................................................................1

**ARGUMENT**...................................................................................................................1

    **A.  The Plaintiff Sufficiently Alleged That Defendant Used Predictive Dialers To Call His Cellular Phone**..............................................................................1

    **B.  The *ACA International* Opinion Did <u>Not</u> Overturn The FCC's 2003 and 2008 Rulings That A Predictive Dialer Is Encompassed By The TCPA**..........5

**CONCLUSION**..............................................................................................................21

## **TABLE OF AUTHORITIES**

*ACA Int'l v. FCC*,

    885 F. 3d 687 (D.C. Cir. 2018)..................................................................................18

*Bell v. Reno*,

    218 F.3d 86 (2d Cir. 2000)......................................................................................15

*Brown v. NRA Grp., LLC*,

    2015 WL 3562740 (M.D. Fla., June 5, 2015)...........................................................14

*CE Design, Ltd. v. Prism Business Media, Inc.*,

    606 F.3d 443 (7th Cir. 2010)......................................................................................5

*Dominguez v. Yahoo, Inc.*,

    629 Fed. Appx. 369 (3d Cir. 2015)...........................................................................17

*Estrella v. Ltd. Fin. Servs., LP*,

    2015 WL 6742062 (M.D. Fla., Nov. 2, 2015)..........................................................13

*France v. Ditech Fin., LLC*,

    No. 817CV3038T24MAP, 2018 WL 1695405 (M.D. Fla. Apr. 6, 2018)..................13

*Gager v. Dell Fin. Servs., LLC*,

    727 F.3d 265 (3d Cir. 2013).......................................................................................1

*Glauser v. GroupMe, Inc.*,

    No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015).............................14

*Hernandez v. Collection Bureau of Am., Ltd.*,

    2014 WL 4922379 (C.D. Cal, Apr. 16, 2014)............................................................5

*Herrick v. GoDaddy.com LLC*,

    No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018).............12

*In re Collecto, Inc.*,

    2016 WL 552459 (D. Mass., Feb. 10, 2016).............................................................13

*Jones v. FMA Alliance Ltd.*,

    2013 WL 5719515 (D. Mass., Oct. 17, 2013)..........................................................14

*Lary v. Trinity Phys. & Fin. Svcs.*,

    780 F. 3d 1101 (11th Cir. 2015).................................................................................21

*Leyse v. Clear Channel Broadcasting, Inc.*,

    545 Fed. Appx. 444 (6th Cir. 2013)............................................................................5

ii

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014)......................................................................4

*Mandel Bros. v. FTC*,
    254 F.2d 18 (7th Cir. 1958)........................................................................16

*Marshall v. CBE Grp., Inc.*,
    No. 216CV02406GMNNJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018)........................12

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)...........................................................1

*Moore v. Dish Network L.L.C.*,
    57 F. Supp. 3d 639 (N.D.W. Va. 2014)..............................................................14

*Morse v. Allied Interstate, LLC*,
    65 F. Supp. 3d 407 (M.D. Pa. 2014)................................................................14

*Nack v. Walburg*,
    715 F.3d 680 (8th Cir. 2013)........................................................................5

*Parm v. Nat'l Bank of Ca., N.A.*,
    835 F .3d 1331 (11th Cir. 2016)....................................................................16

*Reyes v. BCA Financial*,
    2018 WL 2220417, 1:16-cv-24077-JG [Docket 124] (FLSD May 14, 2018)...............10-12

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014)................................................................14

*Swaney v. Regions Bank*,
    No. 2:13-CV-00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018)..................12, 13

*U.S. v. Hendrickson*,
    26 F.3d 321 (2d Cir. 1994)........................................................................17

*U.S. v. Moore*,
    613 F.2d 1029 (D.C. Cir. 1979)....................................................................15

*U.S. v. Rehaif*,
    868 F.3d 907 (11th Cir. 2017)......................................................................20

*U.S. v. Ven-Fuel, Inc.*,
    758 F.2d 741 (1st Cir. 1985)........................................................................16

*U.S. Customs Serv. v. Fed. Labor Relations Auth.*,

739 F.2d 829 (2d Cir. 1984)............................................................................15


Statutes and Other Sources

47 U.S.C. § 227(b)(1)(A)(iii)............................................................................1

Antonin Scalia & Bryan Garner,

*Reading Law: The Interpretation of Legal Texts* 152 (2012)..............................16

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

*Report and Order*, 30 FCC Rcd. 7961, 7972 (2015)............................................5

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

*Report and Order*, 7 FCC Rcd. 8752, 8792 (1992)............................................2

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

*Report and Order,* 18 FCC Rcd. 14014, 14091–93 (July 3, 2003)....................3

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

*Report and Order,* 23 FCC Rcd 559, 566 (Jan. 4, 2008)........................................4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

*Report and Order,* 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008)....................................4

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Complaint, pursuant to FRCP 12(b)(6).  After receiving countless calls from Sirius XM, all without a human being on the other line, Plaintiff commenced this action under the Telephone Consumer Protection Act.  Defendant now moves to dismiss the Plaintiff's Complaint based on a key misconception of the law.  Significantly, Defendant concedes that the Plaintiff has sufficiently alleged the use of a 'predictive dialer' in the placement of these calls.  Nonetheless, Defendant believes that the D.C. Circuit Court of Appeals has recently overturned the FCC's longstanding findings, which has held for the past <u>fifteen years</u> that 'predictive dialers' are encompassed within the reach of the TCPA.  As set forth below, the D.C. Circuit did not do – and could not have done – any such thing.  This misunderstanding of the D.C. Circuit's actions is the <u>sole</u> basis for the Defendant's Motion, and is easily corrected with a critical reading of the D.C. Circuit's ruling.

## ARGUMENT

### A.  The Plaintiff Sufficiently Alleged That Defendant Used Predictive Dialers To Call His Cellular Phone.

Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted machine-generated calls.  *See, Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012); *see also, Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). In order to accomplish that goal, the TCPA provides that it unlawful to make:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any **automatic telephone dialing system** or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

1

Defendant's entire Motion is based on its belief that the Plaintiff did not adequately allege the use of an 'automatic telephone dialing system'. The definition of that term is contained in 47 USC § 227(a), under the heading 'Definitions', which provides: "As used in this section, the term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See id.* This is the statutory definition provided by Congress when the TCPA was first enacted in 1991.

The strict definition contained in the statute has been expanded by the Federal Communications Commission ("FCC"), in an exercise of its rulemaking powers. Congress gave the FCC broad authority to interpret and administer the TCPA. In addition to the FCC's general authority to "make such rules and regulations[] and issue such orders" as necessary to carry out the statute's functions, 47 U.S.C. § 154(i), and its authority to "prescribe such rules and regulations as may be necessary in the public interest" to regulate use of the telephone network as common carriage, *Id.* § 201(b), Congress specifically directed the FCC to "prescribe regulations to implement" restrictions on autodialed and prerecorded calls. *Id.* § 227(b)(2).

Since the statute's enactment, the FCC has repeatedly interpreted the definition of ATDS consistent with its Congressional mandate to restrict calls made without human intervention. Initially, the FCC adopted a definition that simply reiterated the statutory language:

> The terms automatic telephone dialing system and autodialer mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

47 C.F.R. § 64.1200(f)(2); *see also*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8792 (1992) (the "1992 TCPA Order").

However, even back in 1991 the FCC emphasized that it was sure to "decline to adopt definitions offered by commenters where such definitions fit only a narrow set of circumstances, in favor of broad definitions which best reflect legislative intent by accommodating the full range of telephone services and telemarketing practices." *Id.* at 8755.

Technology moved quickly, as it always does, and automated dialing equipment became more sophisticated. In 2003, the FCC exercised its Congressionally granted powers and further defined "automatic telephone dialing system" to include predictive dialers. *See, In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14091–93 (July 3, 2003). "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*." *Id.* at 14091. The Commission finds that a predictive dialer falls within the meaning and statutory definition of an 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14093. (emphasis added).

In ruling on the issue, the FCC specifically discussed the legislative intent behind the TCPA and recognized that "through the TCPA, Congress was attempting to alleviate a particular problem—an increasing number of automated and prerecorded calls to certain categories of numbers." *Id*. at 14092. The FCC further explained that "[i]t is clear that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies," and that the statute was written "to ensure that the prohibition on autodialed calls not be circumvented." *Id*. at 14092-93 (emphasis supplied). Thus, the FCC ruled that the ATDS term of the TCPA "cover[s] any equipment that has the specified capacity to generate numbers and dial

them without human intervention, *regardless* of whether the numbers called are randomly or sequentially generated or come from calling lists." *Id.* at 14093 (emphasis supplied).

This 2003 holding was then expressly reaffirmed in 2008. In response to a subsequent request for clarification, the FCC "affirmed that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd 559, 566 (Jan. 4, 2008). The petitioner requesting clarification argued that "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id.* The FCC rejected this interpretation, because "the basic function of such dialing equipment" is the same— "the capacity to dial numbers without human intervention." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008).

This issue came up before the FCC again in 2012, and the FCC stuck to its basic premise. Although dialers today are indeed far more advanced than the autodialers used at the time the TCPA was originally drafted, "[t]he basic function of such equipment…has not changed—the capacity to dial numbers without human intervention" and to "dial thousands of numbers in a short period of time." 18 FCC Rcd. 14014, 14092. The ability to produce random or sequential numbers is therefore not a necessary capacity of an ATDS if the system (1) stores numbers before (2) dialing them (3) without human intervention. *See, 2012 TCPA Order*, 27 FCC Rcd. 15391, 15392 n.5.

Neither the 2003, 2008 or 2012 TCPA Orders were appealed "within 60 days after its entry" as provided in 28 U.S.C. § 2344. Therefore, this Court is bound by these Orders. *See, Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1113 (11th Cir. 2014) (overruling district court's holding that it had jurisdiction to review 2008 FCC ruling); *Leyse v. Clear Channel Broadcasting,*

*Inc.*, 545 Fed. Appx. 444, 454-455 (6th Cir. 2013) (finding that FCC's 2003 TCPA Order required deference under Hobbs Act); *Nack v. Walburg*, 715 F.3d 680, 685-86 (8th Cir. 2013) (FCC regulation required deference under Hobbs Act); *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-47 (7th Cir. 2010) (holding district court lacked jurisdiction to consider FCC's regulation of TCPA regarding "established business relationship" defense).

As Defendant begrudgingly concedes, Plaintiff's allegations "might be consistent with the use of a predictive dialer." *See,* Docket 109, page 5. As such, Defendant's Motion to Dismiss must be denied, where the Plaintiff clearly alleged that he was called by dialing equipment that has been encompassed by the TCPA since at least 2003. Defendant would nonetheless have this Court believe that it was just handed a get-out-of-jail-free card by the D.C. Circuit Court of Appeals, and that fifteen years of established FCC jurisprudence have magically been overturned. As set forth in the next section, the D.C. Circuit Court of Appeals did no such thing.

## B. The *ACA International* Opinion Did <u>Not</u> Overturn The FCC's 2003 and 2008 Rulings That A Predictive Dialer Is Encompassed By The TCPA.

In 2014 and 2015, several companies asked the FCC to rule that the term "capacity" must be limited to a device's "present ability" or "current capacity," rather than its "potential abilities," even though Congress did not specifically impose that limitation. *See, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 30 FCC Rcd. 7961, 7972 (2015) (the "2015 TCPA Order"). In July 2015, the FCC declined to adopt such a limitation, reasoning that the ordinary definition of "capacity" includes potential abilities, and that limiting the statutory definition of ATDS would undermine enforcement of the TCPA. *Id.* at 7972-7977. The FCC ruled that the term "capacity" can encompass certain potential abilities, so long as those abilities are not "too attenuated" or "theoretical." *Id.* at 7975; *see also, Hernandez v. Collection Bureau of Am., Ltd.*, 2014 WL 4922379 (C.D. Cal, Apr. 16, 2014) (finding that the

defendant's dialer was an ATDS because it had the ability to dial in predictive mode regardless of whether it was used that way).

The 2015 FCC Order rubbed many people (mainly businesses) the wrong way, because of the potential for even the casual smartphone user to be swept up in the TCPA. As summed up in a dissent by then-Commissioner Ajit Pai (now Chairman of the FCC), many people believed that "after this Order, each and every smartphone, tablet, VoIP phone, calling app, texting app—pretty much any phone that's not a 'rotary-dial phone'—will be an automatic telephone dialing system." *See, Dissenting Statement of Ajit Pai,* at 2.[1] As a result, a host of business interests immediately appealed the 2015 FCC Order to the D.C. Circuit Court of Appeals.

On March 16, 2018, the D.C. Circuit issued its long-awaited decision in *ACA International v. FCC,* 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018). That opinion is entirely irrelevant here. Indeed, the only formal effect of ACA International is that it sets aside certain portions of the FCC's 2015 order. Nothing in the court's opinion supports the view that the D.C. Circuit intended to overturn the FCC's 2003, 2008 and 2012 orders, or that it possibly could have done so. The only matter before the D.C. Circuit in *ACA International* was a Hobbs Act appeal from the 2015 FCC order. In a Hobbs Act appeal, the court has authority "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" final FCC orders. 28 U.S.C. § 2342. The Hobbs Act does not give the court jurisdiction to do more than this.

The D.C. Circuit's brief references to the 2003 and 2008 FCC orders in *ACA International* do nothing to undermine the conclusion that the opinion decides only the validity of the 2015 order. Except for a brief mention of the 2003 order in an introductory section describing the FCC's history of rulemaking and declaratory rulings,[2] *ACA International* mentions the FCC's 2003 and

---

[1] https://apps.fcc.gov/edocs_public/attachmatch/DOC-333993A5.pdf, last visited on May 9, 2018.
[2] *ACA Int'l* at *2.

2008 order only in section II(A)(2). That section first addresses the question whether the existence

of the 2003 and 2008 orders deprives the D.C. Circuit of jurisdiction to entertain the challenge to

the 2015 order. This was a necessary prerequisite for the court to address the 2015 order. The FCC

had argued that the petitioners could not appeal the part of the order that addresses the definition

of ATDS because it simply reiterated questions that the previous orders had resolved. The court's

discussion of this question reads in full:

> As a threshold matter, the Commission maintains that the court lacks jurisdiction
> to entertain petitioners' challenge concerning the functions a device must be able to
> perform. The agency reasons that the issue was resolved in prior agency orders—
> specifically, declaratory rulings in 2003 and 2008 concluding that the statutory
> definition of an ATDS includes "predictive dialers," dialing equipment that can
> make use of algorithms to "assist[ ] telemarketers in predicting when a sales agent
> will be available to take calls." [citations omitted] According to the Commission,
> because there was no timely appeal from those previous orders, it is too late now to
> raise a challenge <u>by seeking review of a more recent declaratory ruling</u> that
> essentially ratifies the previous ones. We disagree.
>
> While the Commission's latest ruling purports to reaffirm the prior orders, that does
> not shield the agency's pertinent pronouncements from review. <u>The agency's prior
> rulings left significant uncertainty about the precise functions an autodialer must
> have the capacity to perform.</u> Petitioners covered their bases by filing petitions for
> both a declaratory ruling and a rulemaking concerning that issue and related ones.
> *See, e.g.*, Prof'l Ass'n for Customer Engagement, Inc. Pet. 3-4; ACA Int'l Pet. 6;
> GroupMe, Inc. Pet. 3; Glide Talk, Ltd. Pet. 13. In response, the Commission issued
> a declaratory ruling that purported to "provid[e] clarification on the definition of
> 'autodialer,' " and denied the petitions for rulemaking on the issue. 2015
> Declaratory Ruling, 30 FCC Rcd. at 8039 ¶ 165 & n.552. **The ruling** is thus
> reviewable on both grounds. *See* 5 U.S.C. § 554(e); *Biggerstaff v. FCC*, 511 F.3d
> 178, 184-85 (D.C. Cir. 2007).[3]

This section of the D.C. Circuit's opinion, while it refers to the previous orders, makes it

clear that the court's ruling addressed <u>only</u> the 2015 order and the additional interpretations

provided in that order. For example, the court stated that it disagreed with the argument that

"because there was no timely appeal from those previous orders, it is too late now to raise a

---

[3] *ACA Int'l* at *10 (section II(A)(2)(a) of the opinion) (emphasis added).

challenge by seeking review *of a more recent declaratory ruling… .*". *Id.* (emphasis added). In addition, the D.C. Circuit concluded that "[t]he ruling"—in the singular—is reviewable.[4] Thus, nothing in this section of the *ACA International* opinion purports to expand the scope of the D.C. Circuit's review to the 2003 and 2008 orders. Moreover, as can be seen from the underlined portion of the quote above, the D.C. Circuit recognized that the prior orders left some issues unclear, and it was only those open issues that the FCC addressed in the 2015 order.

After concluding that the existence of the 2003 and 2008 orders did not foreclose review of the 2015 order, the D.C. Circuit moved on, in section II(A)(2)(b), to the question of the validity of the 2015 order. This section deals with the 2015 order's ambiguity about whether an ATDS "must *itself* have the ability to generate random or sequential numbers to be dialed … [or whether it is] enough if the device can call from a database of telephone numbers generated elsewhere."[5] The D.C. Circuit referred to the 2003 and 2008 orders only in the context of trying to interpret the 2015 order. For example, the court said that "[t]he Commission's prior declaratory rulings *reinforce*" the court's understanding that the 2015 order required that an ATDS must generate the numbers it dials.[6] Then the D.C. Circuit went on to point out that the 2015 order also reaffirmed a part of the 2003 order that "suggests a competing view."[7] After this discussion. the D.C. Circuit concluded that the 2015 order was so unclear that it did not satisfy the requirement of reasoned decision making:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers).

\* \* \*

---

[4] "The ruling is thus reviewable on both grounds." *ACA Int'l* at \*10.
[5] *ACA Int'l* at \*10.
[6] *Id* at \*11 (emphasis added).
[7] *Id.*

But the Commission nevertheless declined a request to "clarify[ ] that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." 2015 Declaratory Ruling, 30 FCC Rcd. at 7976 ¶ 20.

* * *

In short, the Commission's *ruling*, in describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decisionmaking.[8]

The D.C. Circuit thus made clear that it was only reviewing, and striking down, the 2015 FCC Order as unreasoned decision-making. At no point did the D.C. Circuit make *any* mention of reversing the 2003 and 2008 FCC Orders. That the validity of the 2003 and 2008 Orders was not before the D.C. Circuit is made even clearer by an examination of the rulemaking petition that ACA International filed with the FCC in 2014, requesting the ruling that it then appealed. In that petition, ACA International stated:

In 2003, the Commission found that predictive dialers fall within the meaning and statutory definition of autodialers: "[w]e believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of '[ATDS]' and the intent of Congress." In 2008, the FCC reiterated "that a predictive dialer constitutes an [ATDS] and is subject to the TCPA's restrictions on the use of autodialers."

**ACA does not disagree with the FCC's ruling on this point**.[9]

If ACA or some other party had wanted to challenge the 2003 or 2008 rulings, it was free to petition the Commission to reconsider them, and then file a Hobbs Act appeal if it was

---

[8] *Id.* at *12 (emphasis added).

[9] ACA International, Petition for Rulemaking of ACA International (filed Feb. 11, 2014) (emphasis added), *available at* https://ecfsapi.fcc.gov/file/7521072801.pdf. The ACA petition went on to point out: "But it is critical that the Commission confirm that simply because a predictive dialer can be an ATDS for purposes of the TCPA, this does not mean that a predictive dialer must be an ATDS under the TCPA. Pursuant to the statute, to be an ATDS under the TCPA, equipment must have the listed elements. A predictive dialer that does not contain those statutory elements by definition is not an ATDS under the statute."

dissatisfied with the Commission's disposition of the petition.[10]  In its request for a rulemaking to the FCC preceding the 2015 order, the ACA expressly did not disagree with the prior orders. Instead, it asked for a clarification of the extent of the orders as they related to statutory term "capacity."[11]

Defendant thus takes an overly simplistic view, by assuming that the D.C. Circuit broadly wiped out fifteen years of FCC jurisprudence while addressing the validity of the 2015 Order.  This position was **expressly rejected this very month**, in an extensive and well reasoned 36-page Opinion issued in the matter of *Reyes v. BCA Financial*, 2018 WL 2220417, 1:16-cv-24077-JG [Docket 124] (FLSD May 14, 2018).  A copy of that decision is annexed hereto as Exhibit A.  As here, the *Reyes* defendant conceded the use of a predictive dialer, but argued that the *ACA International* decision also overturned the 2003 and 2008 FCC Orders, and that  accordingly "the prior FCC orders can no longer be relied upon."  *See,* Exhibit A, page 26.  The *Reyes* court disagreed for three reasons:

> **First, nowhere in the D.C. Circuit's opinion are the prior FCC orders overruled. Indeed, that would have been impossible given that the time to appeal those orders had long passed. And when addressing those prior orders, the D.C. Circuit merely said that it had jurisdiction to address the recent pronouncements and clarifications issued in 2015, not whether the 2003 and 2008 orders remained valid.**
>
> **Second, when the D.C. Circuit said that the FCC had provided too expansive an interpretation of the TCPA, the D.C. Circuit was not referring to the prior or recent rulings equating predictive dialers to ATDSs. Rather, the D.C. Circuit was referring to the FCC's interpretation of the TCPA as encompassing devices that have both the present and *future* capacity to acts as ATDSs. That future- or potential-capacity interpretation was problematic because it had "the apparent effect of embracing any and all smartphones" given that**

---

[10] *See, Mais v. Gulf Coast Collection Bur., Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) (FCC's 2008 order defining prior express consent is binding in suit brought in district court by private litigant; "Mais is free to ask the Commission to reconsider its interpretation of 'prior express consent' and to challenge the FCC's response in the court of appeals.")

[11] ACA International, Petition for Rulemaking of ACA International (filed Feb. 11, 2014), *available at* https://ecfsapi.fcc.gov/file/7521072801.pdf.

"essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS." *ACA Int'l*, 885 F.3d at 696.

In this case, however, there is no issue concerning the Noble predictive dialer's present versus future capacity. Although BCA Financial disputes that the Noble predictive dialer is an ATDS, the issue is not whether BCA Financial may *later* convert it into an ATDS. That is not Reyes' theory of liability. Rather, it is that the Noble predictive dialer *is* an ATDS as *currently* configured and utilized. Therefore, the 2015 FCC order concerning present versus future capacity would not have had an impact in this case anyway, let alone *ACA International's* decision concerning that issue.

Third, although *ACA International's* rulings concerning a device's ability to generate random or sequential numbers and the need for human intervention hit closer to home, they still do not warrant denial of summary judgment in this case. To understand why, one must focus on not just what *ACA International* did but on what it did **not** do.

Specifically, what *ACA International* did was to reject the FCC's have-your-cake-and-eat-it-too approach to the questions before it. The FCC was of "two minds on the issue" of whether "a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer," or whether "that equipment can meet the statutory definition even if it lacks that capacity." *Id.* at 701–02. The FCC answered "yes" and "yes," i.e., it *must have* that ability and it *may lack* that ability, two conflicting answers that the D.C. Circuit could not accept because it provided no meaningful guidance.

But what *ACA International* did **not** do is endorse one interpretation over the other, even implicitly. *ACA International* did not say that a predictive dialer, or any other type of device, must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer. Nor did it say that a predictive dialer, or any other type of device, may lack that capacity. In fact, the D.C. Circuit said that "[i]t might be permissible for the Commission to adopt **either interpretation.**" *ACA Int'l*, 885 F.3d at 703 (emphasis added). But what the FCC could not do was "espouse both competing interpretations in the same order." *Id.*

In this case, BCA Financial is essentially urging the Court to adopt the first interpretation -- i.e., that a predictive dialer must be able to generate and dial random or sequential numbers to be an ATDS -- based on *ACA International's* authority. But *ACA International* does not compel that conclusion because it did not adopt that interpretation. At best, *ACA International* arguably calls into doubt the FCC's previous broad statements that predictive dialers are ATDSs regardless of whether they call randomly or from a sequential list or a set list of numbers. But perhaps not, given that the D.C. Circuit did not adopt one interpretation over the other. **In any event, as already explained, absent an express rejection of the**

prior FCC orders, the Court cannot deviate from them and impose my own interpretation of the TCPA.

*See, Reyes v. BCA Financial*, Exhibit A, pages 26-28.

The *Reyes* decision is the first court post-*ACA International* that analyzed the exact question before this Court: whether or not *ACA International* overturned the FCC's 2003 and 2008 Orders.[12] The only other court that addressed this same question reached the very same answer just this past week. *See, Swaney v. Regions Bank*, No. 2:13-CV-00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018):

> In *ACA International*, the D.C. Circuit invalidated certain portions of the 2015 FCC Order, **but not the portion of the Order reaffirming the FCC's 2003 determination that, "while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS."** 885 F.3d at 702 (quoting the 2013 FCC Order). In its 2003 Order, the FCC concluded that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention." 2003 FCC Order at 14092. In light of *ACA International*, **that proposition still stands**. 885 F.3d at 702.

---

[12] Several cases deserve passing mention. First, is the decision in *Marshall v. CBE Grp., Inc.*, No. 216CV02406GMNNJK, 2018 WL 1567852, at \*\*4–8 (D. Nev. Mar. 30, 2018), where the district court relied on the D.C. Circuit's opinion to find that a predictive dialer is not an ATDS. As explained by the *Reyes* court, however, the defendant in *Marshall* used a manual clicker application or "MCA" in conjunction with a predictive dialer. *See*, Exhibit A, at 22. That fact was key to the district court's decision in *Marshall*, which expressly skirted the argument that *ACA International* left in place the 2003 and 2008 FCC Orders, finding that "[e]ven assuming, *arguendo*, that Plaintiff is correct, these interpretations have repeatedly emphasized the significance of the 'human intervention' element to the ATDS analysis." *See*, Exhibit A, at 22-23. And on that front, the *Marshall* Court found "that the overwhelming weight of authority applying this element hold that 'point-and-click' dialing systems, paired with a cloud-based pass-through services, do not constitute an ATDS as a matter of law in light of the clicker agent's human intervention." *Id.*, at 23. In this case, there is no parallel allegation of the use of such a 'clicker' dialing system.

The second decision that bears mention is *Herrick v. GoDaddy.com LLC,* No. CV-16-00254-PHX-DJH, 2018 WL 2229131, at \*1 (D. Ariz. May 14, 2018). That case involved mass advertising text messages being sent to consumers, and did not involve the use of a predictive dialer. The *Herrick* court simply held that "as a result of the D.C. Circuit's holding on this issue, this Court will not defer to any of the FCC's 'pertinent pronouncements' regarding the first required function of an ATDS, i.e., whether a device that has the capacity to store or produce telephone numbers 'using a random or sequential number generator.' " *Id.*, at 87, citing *ACA Int'l*, 885 F.3d at 701. Nowhere did the *Herrick* court find that *ACA International* overturned the 2003 and 2008 FCC Orders as it relates to predictive dialers. Nor did the *Herrick* court ever conclude that predictive dialers were no longer an ATDS following the *ACA International* decision.

Defendant's principal argument against summary judgment in this case is that "to be an ATDS, equipment must have the capacity to store or produce numbers using a random or sequential number generator, even if that capacity is never used." (Doc. #118 at 4-5). **But that argument cannot be squared with the continuing validity of the 2003 FCC Order.** "

*Swaney v. Regions Bank*, No. 2018 WL 2316452 at *1-2 (emphasis added).

As explained above, nothing in the *ACA International* decision purports to invalidate the 2003 or 2008 FCC Orders—review of which would be well beyond the D.C. Circuit's jurisdiction in any event. Those orders clearly remain in effect and govern the instant action, as both the *Reyes* and *Swaney* courts found. As a result, this Court is required to analyze the Plaintiff's allegations by applying the FCC's 2003 and 2008 orders; this Court will simply have to perform this role without the benefit of the 2015 order.

This Court need not perform that analysis in a vacuum, however. There is a plethora of caselaw that has followed the FCC's definition of ATDS, focusing on the machines' ability to make calls without human intervention, not their inability to generate or make up random numbers out of thin air. *See, France v. Ditech Fin., LLC*, No. 817CV3038T24MAP, 2018 WL 1695405, at *8 (M.D. Fla. Apr. 6, 2018)(post-*ACA International* decision rejecting the argument that "given that the phone calls were intentionally placed to communicate with Plaintiffs specifically, an inference can be drawn that the phone calls were not made by an ATDS, which calls phone numbers using a random or sequential number generator" and instead finding that "Plaintiffs' allegations are consistent with the use of a predictive dialer, and therefore, the Court rejects Defendant's argument on this issue"); *In re Collecto, Inc.*, 2016 WL 552459, at *4 (D. Mass., Feb. 10, 2016) ("[T]he FCC's definition of an ATDS is based on the capacity of a dialer to operate without human intervention); *Estrella v. Ltd. Fin. Servs., LP*, 2015 WL 6742062, at *1 (M.D. Fla., Nov. 2, 2015) ("The essential function of an ATDS is 'the capacity to dial numbers without human

intervention.' "); *Brown v. NRA Grp., LLC*, 2015 WL 3562740, at \*4 (M.D. Fla., June 5, 2015) (rather than "rely on a random or sequential number generator," the focus should be on whether a dialer has the "capacity to dial numbers without human intervention."); *Glauser v. GroupMe, Inc.*, 2015 WL 475111, at \*6 (citing the FCC's 2008 and 2012 TCPA rulings and concluding that "while the capacity for random/sequential dialing is not required for TCPA liability, the capacity to dial numbers without human intervention is required."); *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014) (holding that the debt collectors' system was an ATDS because "there was no human intervention at the time the calls were placed"); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (collecting cases and stating: "the [FCC] has issued decisions stating that an ATDS may include equipment that automatically dials numbers from a stored list without human intervention, even when the equipment lacks the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."); *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 655 (finding use of ATDS on summary judgment because "lists of numbers [were] transferred from the Campaign Manager to the dialer hardware without human intervention, and the dialer hardware automatically dial[ed] numbers from those lists"); *Jones v. FMA Alliance Ltd.*, 2013 WL 5719515, at \*1 n. 9 (D. Mass., Oct. 17, 2013) ("The FCC determined that 'equipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS, because 'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.'").

In sum, it is clear that (1) the FCC has found in 2003 and 2008 that predictive dialers are encompassed by the TCPA's restrictions on the use of 'automatic telephone dialing systems,' (2) the Plaintiff sufficiently alleged the use of such a predictive dialing system, and that (3) the D.C. Circuit's Opinion in *ACA International* did nothing to affect the validity of the 2003 and 2008

FCC Orders. As such, Defendant's Motion must be denied, where it concedes that Plaintiff sufficiently alleged the use of a predictive dialer.

### C. An ATDS Need Not Randomly or Sequentially Generate Numbers.

Even if, *arguendo,* the D.C. Circuit tossed the proverbial babies out with the bathwater, and somehow reversed the 2003 and 2008 Orders when only evaluating the 2015 Order – leaving this Court to resort to its own statutory analysis - it is clear that the FCC was right on the money in reading the statutory text. As discussed above, the TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Broken apart, subsection (A) thus reads as follows: equipment which has the capacity

to store or produce telephone numbers to be called,

using a random or sequential number generator

The "or" between "store" and "produce" must be read in the disjunctive. "The word 'or' in is not a fertile word which is subject to varied constructions…..When 'or' is inserted between two clauses, the clauses are treated disjunctively rather than conjunctively." *U.S. Customs Serv. v. Fed. Labor Relations Auth.*, 739 F.2d 829, 832 (2d Cir. 1984); *U.S. v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979) ("Or" must be accepted for its disjunctive connotation). Thus, under the basic standards of statutory interpretation, disjunction must be applied to the two phrases: to store or produce telephone numbers to be called.

Under the rule of last antecedent, the qualifying participial phrase, using a random or sequential number generator, defines only the second part of the disjunction – to produce telephone numbers to be called. Qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote. *See, Bell*

*v. Reno*, 218 F.3d 86, 91 (2d Cir. 2000) ("As a general matter, "qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote."); *U.S. v. Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985); *Mandel Bros. v. FTC*, 254 F.2d 18 (7th Cir. 1958), rev'd on other grounds, 359 U.S. 385, 79 S. Ct. 818, 3 L.Ed.2d 893 (1959). When applying the nearest-reasonable-referent canon, the statement using a random or sequential number generator would similarly only modify the words to be called. *See, Parm v. Nat'l Bank of Ca., N.A.*, 835 F .3d 1331, 1336 (11th Cir. 2016) ("'When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent'") (*quoting* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012)).

Accordingly, treating the disjunctive "or" as separating parts of the phrase and applying the rule of last antecedent means that the qualifying phrase "using a random or sequential number generator" applies only to the words immediately preceding it, i.e. "produce telephone numbers to be called." It does not extend to the more remote word "store" that precedes the disjunctive "or." Putting subsections (A) and (B) together, the statutory text thus covers any machine with capacity: to store and dial numbers as well as any machine with capacity to produce telephone numbers to be called, using a random or sequential number generator and dial numbers.   If Congress wanted the postpositive modifier to modify "store or produce," the statute would read "equipment which has the capacity (A) to store or produce, using a random or sequential number generator, telephone numbers; and (B) to dial such numbers."  Instead, Congress wrote the statute to refer to the manner in which numbers are generated *to be called*, whether from a stored database or produced by the system. This is exactly what the FCC found.

Pure logic dictates that this plain reading of the statutory text comports with the statute's basic function. A statute should be interpreted in a way that avoids absurd results. *See, e.g., U.S. v. Hendrickson*, 26 F.3d 321, 336 (2d Cir. 1994). Defendant argues that the phrase using a random or sequential number generator, applies both to the store and produce telephone numbers to be called parts of the statutory definition. But that way of reading the section would lead to an absurd result, as it would make the statute applicable only to some mystical machine that somehow "stores" numbers using a random or sequential generator. No FCC commenter has ever suggested that such a machine exists, and Defendant here does not either.[13] It would, moreover, require that, to be covered under the law, a machine has to be able to store and produce numbers out of thin air, not just automatically dial them from a pre-determined list like most computers do today.

The crux of Defendant's Motion to Dismiss is that the only dialing system that qualifies as an ATDS is one that truly just generates and calls phone numbers at random. Defendant's logic thus continues that its dialer cannot be an ATDS because Plaintiff's allegations "suggests that Sirius XM was *targeting* Pinkus for calls, not that it was dialing at random or in sequence.." *Docket 109,* at 10. Defendant's argument that a dialing system would need to 'generate' only random numbers, however, misconstrues the meaning of the word 'generate'. There are at least two ways to *automatically* generate numbers from a stored database for dialing, either truly at random or in some sequence (e.g., a dialing algorithm). *See also, ACA Int'l v. FCC*, 885 F. 3d 687,

---

[13] The Third Circuit in *Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 372 n. 1 (3d Cir. 2015) noted this absurd reading and remanded to the District Court for clarification:

> To the extent the District Court held otherwise, we clarify that the statutory definition is explicit that the autodialing equipment may have the capacity to store or to produce the randomly or sequentially generated numbers to be dialed. **We acknowledge that it is unclear how a number can be stored (as opposed to produced) using a "random or sequential number generator."** To the extent there is any confusion between the parties on this issue (or whether Yahoo's equipment meets this requirement in Dominguez's case), the District Court may address it on remand.

701 (D.C. Cir. 2018) (recognizing that "[a]nytime phone numbers are dialed from a set list, the database of numbers must be called in *some* order—either in a random or some other sequence."). Of course, if the numbers are *not* automatically generated, a person can call stored telephone numbers by manual/cognitive selection at the time of the call, which would be *neither* random *nor* sequential. For instance, using the redial function, traditional speed dialing,[14] or calling from a contact list (such as ordinary smart phones) would be *neither* random *nor* sequential because the person calling is manually choosing the telephone number to call at the time of the call, rather than having the number *automatically generated* from the stored database to call the next number in queue. This automatic, systemic generation of the next number in the dataset *to be called* distinguishes an autodialer from other devices which merely store telephone numbers and then dial them at the caller's command.

Defendant would have the Court find that "generate" means to create something from thin air, only, but this is not so. For example, a windmill "generates" energy from wind, a juicy rumor "generates" buzz among elementary school kids and a dialing system "generates" a sequence of phone numbers to be called from the dialer administrator's database.

Indeed, Defendant's constrained reading of the TCPA would render much of the statute superfluous and nonsensical. "[S]tatutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant." *Levin*, 849 F. 3d at 1004. Defendant's interpretation would read the word *store* out of the statute, and make it nonsensical, by requiring numbers to be *produced* randomly or sequentially from thin air rather than generated randomly or sequentially

---

[14] "Speed Dialing" refers to single digit dialing for frequently used telephone numbers. For instance, it is, or was, common for telephones to allow persons to program frequently used numbers so that such numbers could be called by the press of a single button. Because the caller would have to choose which person to speed dial at the time of the call and press the button, such a system would not be an ATDS. In such a case, the telephone itself does not randomly or sequentially generate the telephone number to be called – the person calling selects it.

from a *stored* database. In addition, Defendant's reading would cause the words "to be called" to become superfluous, because under its reading the "calling" would have been accomplished by merely using the words "equipment that has the capacity to produce telephone numbers using a random or sequential number generator and to dial such numbers." Plaintiff's reading is not only the plain reading, it is the <u>only</u> reading that gives meaning to the words "store" and "to be called," and the only reading that does not render the word "store" nonsensical.

In addition to the words "store" and "to be called," other portions of the TCPA also become superfluous or nonsensical if the Court were to adopt Defendant's definition. A plain reading of 47 U.S.C. § 227(b) clearly envisions *some* permissible uses of an ATDS. For instance, someone can use an ATDS for emergency purposes, if it has the consent of the called party, or is calling to collect a debt owed to the United States federal government, so long as doing so does not simultaneously engage two or more lines of a multiline business. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(D). In addition, the statute permits the FCC to make certain exemptions. 47 U.S.C. § 227(b)(2)(C).

If Defendant's interpretation that the TCPA only covers telephone numbers *produced* randomly from thin air, or *produced* sequentially from thin air, rather than generated from a stored database of numbers, were adopted, it would be impossible for any caller to have a meaningful consent policy. Consent would only exist as a matter of sheer coincidence, and – given the probabilities involved with a random ten-digit number hitting a cell phone user that gave their phone number to the caller – consent might *never* happen, *ever*. Moreover, even if a call were made for a permissible purpose (i.e., with consent or for an emergency), a caller calling numbers produced out of thin air would have no way of ensuring that it was not tying up multiple lines of a multiline business. 47 U.S.C. § 227(b)(1)(D).

Finally, the recently-enacted federal government exemption for collection calls would be irrelevant if collection calls were not generally subject to the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii). After all, entities collecting government debt, or any debt, do not call random or sequential phone numbers from thin air seeking to collect a particular account; rather, they call from a list of numbers they believe will either contact a debtor or assist in locating the debtor, such as the number of a neighbor or relative. Congress was fully aware that courts had interpreted the TCPA to apply to collection calls, and of the FCC's interpretation of an ATDS, when it enacted this exemption in 2015. *See* Pub. L. 114–74, § 301(a)(1)(A).

If Congress wanted to make equipment that automatically dials from a stored database excluded from the Act, it could have done so. Instead, it enacted a *limited* exemption for debt collection calls owed to or guaranteed by the federal government. *Id.* Congress' decision to not amend the ATDS definition, and to instead craft a special exemption for the federal government, signifies that Congress agrees with the longstanding application of the TCPA to automated calls made from a stored database. *See U.S. v. Rehaif*, 868 F.3d 907, 913 (11th Cir. 2017) ("The long time failure of Congress to alter [the law] after it had been judicially construed, and the enactment by Congress of legislation which implicitly recognizes the judicial construction as effective, is persuasive of legislative recognition that the judicial construction is the correct one.") (*quoting Apex Hosiery Co. v. Leader,* 310 U.S. 469, 488 (1940).

Finally, the TCPA permits an award of treble damages if a violation were found to be "willful or knowing." 47 U.S.C. § 227(b)(3). "For example, to [knowingly] violate section 227(b)(1)(A)(i), a defendant must know that he is using an 'automatic telephone dialing system' to place a 'call,' and that the call is directed toward an 'emergency' line." *Lary v. Trinity Phys. & Fin. Svcs.*, 780 F. 3d 1101, 1107 (11th Cir. 2015). If an ATDS only included calls to numbers

20

produced out of thin air, rather than from a stored database, then how could a caller ever *know* it was calling an emergency line (or, for that matter, a cell phone)?

Of course, all of these provisions are not superfluous, because the words *store* and *to be called* have meaning, which gives meaning to the rest to the statute. As Defendant concedes, Plaintiff has adequately pleaded that the system used by Defendant is a predictive dialer, which the FCC has explained "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*." *See, In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. at 14091. As such, it is respectfully submitted that Plaintiff has sufficiently alleged the use of an ATDS in his Complaint, and that the Complaint cannot therefore be dismissed.

## CONCLUSION

Like the ill-fated house of cards, Defendant's entire Motion to Dismiss relies on a single flimsy base: that the FCC's 2003 and 2008 Orders all were somehow overturned by the D.C. Circuit's consideration of the FCC's 2015 Order. The weakness of that support ultimately dooms the Defendant's Motion. A thorough parsing of the *ACA International* decision – such as the one undertaken by the *Reyes* and *Swaney* courts - makes clear that the D.C. Circuit did no such thing. Instead, the D.C. Circuit simply rejected the FCC's 2015 treatment of the 'potential capacity' question - a question which bears no relevance to this action – leaving alone the FCC's 2003 and 2008 treatment of predictive dialers. As such, and particularly where Defendant concedes that Plaintiff has sufficiently pled the use of a 'predictive dialer', it is respectfully submitted that the Defendant's Motion must be denied in its entirety.

Respectfully submitted,

**MARCUS & ZELMAN, LLC**

21

By:__/s/ Yitzchak Zelman_____
Yitzchak Zelman, Esq. (YZ5857)
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:      (732) 695-3282
*Attorney for the Plaintiff Binyamin Pinkus*